25-8169-PGL

## AFFIDAVIT OF PETER MILLIGAN

I, Special Agent Peter Milligan, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been employed as an ATF Special Agent since April 2009 and am currently assigned to the Boston Group VI Field Office. As an ATF Special Agent, my duties include the investigation of violations of laws related to firearms trafficking, firearm possession by felons and other prohibited persons, and the use of firearms in drug trafficking/violent crimes, as well as the investigation of laws related to explosives violations and incendiary (arson) fires.

2. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I have participated in numerous classes of in-service training relating to firearms/narcotics trafficking investigations and arson and explosives investigations. I have been the affiant and/or participated in the execution of numerous state and federal search and arrest warrants pertaining to violations of the federal firearms, narcotics, arson, and explosives laws. I have participated in dozens of investigations relating to the illegal acquisition and sales of firearms and narcotics. During those investigations, I have participated in surveillance, the purchase of firearms, the purchase of narcotics, the execution of search warrants, and I have interviewed witnesses, suspects, and informants. Through my law enforcement training, participation in undercover purchases of firearms, surveillance of firearms traffickers, interviews of suspects, and participation in search warrants and Title III electronic surveillances, I am familiar with the methods that are most commonly used by unlawful firearms traffickers and people dealing in firearms without a Federal Firearms License. Based on my training and experience as an ATF Special Agent, I am familiar with the federal firearms laws.

3. This affidavit is based on a multi-agency investigation into the criminal activities of Guilherme FERNANDES-TAVARES. The agencies involved in the investigation include: the ATF, the Department of Homeland Security, Homeland Security Investigations ("HSI"), and the Marlborough Police Department ("MPD").

4. Pursuant to this investigation, there is probable cause to believe that Guilherme FERNANDES-TAVARES has engaged in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). This affidavit is being submitted in support of an application for a criminal complaint charging FERNANDES-TAVARES with violating of 18 U.S.C. § 922(a)(1)(A), (the "Target Offense").

5. During this investigation, two cooperating witnesses ("CW-1" and "CW-2") made controlled purchases of commercially manufactured firearms, Privately Made Firearms ("PMF") (sometimes referred to as "ghost guns"), and commercially manufactured ammunition from FERNANDES-TAVARES. Unlike commercially manufactured firearms, a PMF or "ghost gun" does not have a serial number. Based on my training and experience, I am aware that a PMF satisfies the definition of "firearm" under 18 U.S.C. § 922(a)(1)(A).

6. CW-1 and CW-2 have requested that their identity not be revealed for fear of reprisal or harm to their physical safety. Based on these fears, CW-1 and CW-2 are seeking protection from law enforcement to include possible relocation. I am aware of the identity of CW-1 and CW-2 and have met with them personally on numerous occasions. CW-1 has a criminal history which includes four adult arrests consisting of motor vehicle/driving related offenses. CW-1 is presently receiving monetary benefits from the ATF. CW-2 has no criminal history. CW-2 is presently receiving monetary and immigration benefits from the ATF. I

believe that CW-1 has provided accurate, truthful and reliable information to law enforcement, including ATF and local police departments in the past and continues to do so.   I believe that CW-2 has provided accurate, truthful and reliable information to law enforcement, including the ATF, HSI, and local police departments, in the past and continues to do so.

7.     The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, information from cooperating witnesses, public records, database checks, and other investigations.   The dates and times in this affidavit are approximate.   Because this affidavit is being submitted for the limited purpose of supporting issuance of a criminal complaint for FERNANDES-TAVARES, I have not presented every fact learned during the investigation but only that information necessary to fully support probable cause for the criminal complaint.

## **PROBABLE CAUSE**

8.     Federal and local investigators had been involved in the investigation of FERNANDES-TAVARES since approximately late December 2023 when CW-1 and CW-2 provided information to ATF regarding FERNANDES-TAVARES trafficking firearms in the area of Marlborough and Framingham.   Thereafter, CW-1 and CW-2, working with law enforcement, made ten controlled purchases, obtaining 11 firearms, including 3 PMFs and ammunition, from FERNANDES-TAVARES.

9.     In late December 2023, CW-1 and CW-2 provided Agents with a Facebook social media account in the name of "Guilherme Fernandes."   CW-1 and CW-2 advised that the Facebook account belongs to the person, later identified as FERNANDES-TAVARES, who was involved in the sale of firearms, and that the account contains images of FERNANDES-

TAVARES. Agents utilized the information from the "Guilherme Fernandes" Facebook account and were able to locate a Massachusetts driver's license for a Guilherme Fernandes Tavares (License No.: XXXXX1987). The Massachusetts driver's license showed a nonrenewable status and did not contain a photograph of the licensee. Agents then utilized the biographical information obtained from the Massachusetts driver's license and were able to locate a series of photographs, captured in February of 2021, of Guilherme FERNANDES-TAVARES taken during a contact with U.S. Customs and Border Protection. When comparing these photographs of FERNANDES-TAVARES to the individual in the recorded controlled firearms transactions discussed below, I believe that the individuals are one and the same, Guilherme FERNANDES-TAVARES.

January 23, 2024 – Polymer 80 PMF Deal

10. On or about January 18, 2024, CW-1 was in contact with FERNANDES-TAVARES regarding the sale of a Polymer 80 PMF pistol. CW-1 communicated with FERNANDES-TAVARES in Portuguese. FERNANDES-TAVARES sent CW-1 a photograph of the Polymer 80 PMF and quoted CW-1 the price of $1,400. After some negotiation, and with the assistance of CW-2, CW-1 and FERNANDES-TAVARES agreed on the price and to meet on January 23, 2024, in Marlborough, MA to conduct the transaction. FERNANDES-TAVARES advised CW-1 that they would meet in a public parking garage, located at 1 Court Street, Marlborough, MA.

11. On or about January 23, 2024, CW-1 and CW-2 traveled to the public parking garage, located at 1 Court Street, Marlborough, MA, to conduct the transaction. Prior to the meeting, ATF agents met with and searched CW-1's and CW-2's person for contraband with

negative results. CW-1 and CW-2 were equipped with an undercover ("UC") vehicle and a recording device which recorded both audio and video as well as official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 were in contact with FERNANDES-TAVARES to advise of their arrival. FERNANDES-TAVARES then directed CW-1 and CW-2 to travel to another public parking garage approximately one block away due to a suspected law enforcement presence in or around the Court Street parking garage. At the direction of FERNANDES-TAVARES, CW-1 and CW-2 traveled to the public parking garage, located at 20 Newton Steet, Marlborough, MA, ("Newton Street Parking Garage"). CW-1 and CW-2 observed FERNANDES-TAVARES operating a black Honda Civic on the second level of the parking garage. CW-1 and CW-2 followed FERNANDES-TAVARES to the top floor of the parking garage, and both vehicles parked. FERNANDES-TAVARES got out of the black Honda Civic and entered the rear driver's side of the UC vehicle. FERNANDES-TAVARES removed a firearm from his person and provided the firearm to CW-2. CW-1 and CW-2 purchased the firearm from FERNANDES-TAVARES in exchange for $1,400. During their meeting, CW-1, CW-2, and FERNANDES-TAVARES reported that they discussed future firearms transactions. FERNANDES-TAVARES advised that he had five firearms, including an AR-15 style rifle that were being shipped into Massachusetts. FERNANDES-TAVARES stated that only four of the firearms were for sale because one of the firearms was already being sold to a different customer.

12. After leaving the meeting location, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided agents with a Polymer 80 PMF, Model PF940C, .40 caliber pistol. Agents again searched CW-1

and CW-2 for contraband and found none. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm.

February 5, 2024 – Smith & Wesson Pistol and Ammunition Deal

13. FERNANDES-TAVARES agreed to meet CW-1 and CW-2 at the same Newton Street Parking Garage on or about February 5, 2024, and sell a Smith & Wesson pistol. Prior to the meeting, ATF agents searched CW-1's and CW-2's person for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video and official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 arrived at the Newton Street Parking Garage and parked on the top level. CW-1 and CW-2 contacted FERNANDES-TAVARES to advise of their arrival. A short time later, FERNANDES-TAVARES arrived in a black Honda Civic and parked on the passenger side of the UC vehicle. FERNANDES-TAVARES was the front passenger of the black Honda Civic. FERNANDES-TAVARES exited the black Honda Civic, entered the rear passenger side of the UC vehicle and conducted the sale of the Smith & Wesson pistol and ammunition in exchange for $1,400. During their meeting, CW-1, CW-2, and FERNANDES-TAVARES discussed the shipment of firearms coming into Massachusetts. FERNANDEZ-TAVARES advised that the shipment could be coming that week. FERNANDES-TAVARES stated that he would contact CW-1 and CW-2 to set up future transactions.

14. After leaving the meeting, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided agents with (i) a Smith & Wesson, M&P 9, 9mm pistol, bearing serial number HRL1186, (ii) three (3) rounds of

Winchester 9mm ammunition, and (iii) a black Glock pistol case. CW-1 and CW-2 were searched and possessed no other contraband. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm and the other items.

<u>February 12, 2024 – PMF Pistol Deal</u>

15. FERNANDES-TAVARES agreed to meet CW-1 and CW-2 at the same Newton Street Parking Garage on or about February 12, 2024 and to sell a PMF pistol. Prior to the meeting, ATF agents searched CW-1's and CW-2's person for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video and official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 arrived at the Newton Street Parking Garage and parked on the top level. CW-1 and CW-2 contacted FERNANDES-TAVARES to advise of their arrival. A short time later, FERNANDES-TAVARES arrived in a black Honda Civic and parked on the top level of the garage. Again, FERNANDES-TAVARES was the front passenger of the black Honda Civic. FERNANDES-TAVARES exited the black Honda Civic, entered the rear passenger compartment of the UC vehicle and conducted the sale of the PMF pistol in exchange for $950. During their meeting, CW-1, CW-2, and FERNANDES-TAVARES again discussed the shipment of firearms coming into Massachusetts. FERNANDES-TAVARES advised that the firearms that were coming were new and the prices would be higher. FERNANDES-TAVARES told them that they would have first pick when the firearms arrived in Massachusetts.

16. After leaving the meeting location, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided

agents with (i) a Glock 19-style, PMF, 9mm pistol and (ii) a Glock .40 caliber magazine. Agents again searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm.

<u>February 22, 2024 – Glock Pistol and Ammunition Deal</u>

17.  FERNANDES-TAVARES again agreed to meet CW-1 and CW-2 at the Newton Street Parking Garage and sell a Glock pistol and ammunition on or about February 22, 2024. Prior to the meeting, ATF agents searched CW-1's and CW-2's person for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video and official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 arrived at the Newton Street Parking Garage and parked on the top level. CW-1 and CW-2 contacted FERNANDES-TAVARES to advise of their arrival. A short time later, FERNANDES-TAVARES arrived in a black Honda Civic and parked on the top level of the garage. FERNANDES-TAVARES was the driver and sole occupant of the black Honda Civic. FERNANDES-TAVARES exited the black Honda Civic, entered the rear passenger compartment of the UC vehicle, and conducted the sale of the Glock pistol and ammunition in exchange for $1,600.

18.  After leaving the meeting location, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided agents with (i) a Glock Model 36 .45 caliber pistol, bearing serial number: BRHE823, (ii) a black Glock firearm case, bearing the same serial number, (iii) two Glock .45 caliber magazines, and (iv) a white Nike tube sock containing ten rounds of PMC .45 caliber ammunition. Agents again

searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm and other items.

February 23, 2024 – USPIS Parcel Seizure

19. On February 23, 2024, CW-1 and CW-2 arranged the purchase of a Taurus pistol from FERNANDES-TAVARES. FERNANDES-TAVARES advised CW-1 and CW-2 that he was awaiting the arrival of a package in the mail that contained the firearm. CW-1 and CW-2 were in contact with FERNANDES-TAVARES regarding when the package would be arriving. FERNANDES-TAVARES provided CW-1 and CW-2 with updates as to when the package containing the firearm would be arriving. ATF contacted the United States Postal Inspection Service (USPIS) in an attempt to locate the package being shipped to FERNANDES-TAVARES. USPIS was able to locate and intercept a package from an individual with an address in Summerville, South Carolina to "Guilherme tavares," at a location I believe, based on surveillance before and after some of these controlled buys to be where he was living; in Marlborough, Massachusetts, which I omit from this Affidavit ("Subject Package").[1] On the same date, I was advised that intended recipient of the Subject Package came to the Marlborough Post Office, located at 20 Florence Street, Marlborough, MA. The recipient identified himself as "Guilherme Tavares" and requested the Subject Package. This person also left his name (Guilherme Tavares) and a phone number with the clerk at the post office and requested a phone call if the Subject Package was located. On February 28, 2024, pursuant to a Federal Search Warrant, USPIS found

---

[1] The individual who shipped this package has been charged in this District for Trafficking in Firearms and Unlawful Shipment of a Firearm Through the United States Mail.

25-8169-PGL

that the Subject Package contained (i) a Taurus Model G3C 9mm pistol, bearing serial number ADA902401, (ii) three magazines and (iii) 24 rounds of 9mm ammunition.

February 28, 2024 – Taurus Pistol Deal

20. FERNANDES-TAVARES agreed to meet CW-1 and CW-2 at the same Newton Street Parking Garage and sell a Taurus pistol on or about February 28, 2024. Prior to the meeting, ATF agents searched CW-1's and CW-2's person for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video and official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 arrived at the Newton Street Parking Garage and parked on the top level. CW-1 and CW-2 contacted FERNANDES-TAVARES to advise of their arrival. A short time later, FERNANDES-TAVARES arrived in a black Honda Civic and parked on the driver's side of the UC vehicle. FERNANDES-TAVARES was the driver and sole occupant of the black Honda Civic. FERNANDES-TAVARES exited the black Honda Civic, entered the rear passenger compartment on the driver's side of the UC vehicle and conducted the sale of the Taurus pistol in exchange for $1,450.

21. After leaving the meeting location, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided agents with a Taurus, Model PT111 G2A, 9mm pistol, bearing serial number ACL491815. Agents again searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm.

25-8169-PGL

March 8, 2024 – SCCY and Taurus Pistol Deals

22.     FERNANDES-TAVARES agreed to meet CW-1 and CW-2 at the same Newton Street Parking Garage to sell a SCCY pistol on or about March 8, 2024. Prior to the meeting, ATF agents searched CW-1's and CW-2's person for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video and official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 arrived at the Newton Street Parking Garage and parked on the top level. A short time later, FERNANDES-TAVARES arrived in a black Chevrolet Sonic and parked on the driver's side of the UC vehicle. FERNANDES-TAVARES was the driver and sole occupant of the black Chevrolet Sonic. FERNANDES-TAVARES exited the black Chevrolet Sonic and retrieved a black firearm box from the passenger side of the vehicle. FERNANDES-TAVARES entered the rear passenger compartment on the driver's side of the UC vehicle with the black firearm box. FERNANDES-TAVARES removed the SCCY pistol from the firearm box and provided it to CW-2. FERNANDES-TAVARES conducted the sale of the SCCY pistol in exchange for $1,400. FERNANDES-TAVARES also displayed an additional Taurus pistol that was inside of the black firearm box. FERNANDES-TAVARES quoted CW-1 and CW-2 the price of $1,500 for the Taurus pistol. CW-1 and CW-2 advised FERNANDES-TAVARES that they would contact him to purchase the Taurus pistol.

23.     After leaving the meeting location, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided agents with a SCCY Industries, CPX-2, 9mm pistol, bearing serial number C178018. Agents

11

again searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm.

24. On the same date, CW-1 contacted FERNANDES-TAVARES and advised that they had the additional $1,500 to purchase the Taurus pistol. FERNANDES-TAVARES agreed to meet CW-1 and CW-2 at the Newton Street Parking Garage and sell the Taurus pistol. Prior to the meeting, ATF agents searched CW-1's and CW-2's person for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video and official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 arrived at the Newton Street Parking Garage and parked on the top level. A short time later, FERNANDES-TAVARES arrived in a black Chevrolet Sonic and parked on the driver's side of the UC vehicle. FERNANDES-TAVARES entered the rear passenger compartment on the driver's side of the UC vehicle with the black firearm box. FERNANDES-TAVARES provided CW-2 with the black firearm box. CW-2 opened the black firearm box and observed a Taurus pistol and magazines inside. FERNANDES-TAVARES conducted the sale of the Taurus pistol in exchange for $1,500.

25. After leaving the meeting location, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided agents with a black plastic Taurus firearms case containing (i) a Taurus, Model GX4 9mm pistol, bearing serial number 1GA61062, and (ii) two 9mm magazines. Agents again searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm.

March 27, 2024 –Polymer 80 PMF Pistol Deal

26.    FERNANDES-TAVARES agreed to meet CW-1 and CW-2 at the Newton Street Parking Garage on or about March 27, 2024, to sell a Polymer 80 PMF pistol. Prior to the meeting, ATF agents searched CW-1's and CW-2's person for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video and official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 arrived at the Newton Street Parking Garage and parked on the top level. CW-1 and CW-2 contacted FERNANDES-TAVARES to advise of their arrival. A short time later, FERNANDES-TAVARES arrived in a black Chevrolet Sonic and parked on the driver's side of the UC vehicle. FERNANDES-TAVARES was the driver and sole occupant of the black Chevrolet Sonic. FERNANDES-TAVARES exited the black Chevrolet Sonic, entered the rear passenger compartment on the driver's side of the UC vehicle and conducted the sale of the Polymer 80 PMF pistol in exchange for $1,800.

27.    After leaving the meeting location, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided agents with (i) a Glock 19-style Polymer 80 PMF, Model PF940C, 9mm pistol with a Glock 19 (9 x 19) slide and (ii) a twenty-eight round capacity .40 caliber extended magazine. Agents again searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm.

April 12, 2024 –Polymer 80 PMF Pistol and Ammunition Deal

28. FERNANDES-TAVARES agreed to meet CW-1 and CW-2 at the Newton Street Parking Garage on or about April 12, 2024 to sell a Polymer 80 PMF pistol. Prior to the meeting, ATF agents searched CW-1's and CW-2's person for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video and official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 arrived to the Newton Street Parking Garage and parked on the top level. CW-1 and CW-2 contacted FERNANDES-TAVARES to advise of their arrival. A short time later, FERNANDES-TAVARES arrived in a black Ford Explorer and parked on the driver's side of the UC vehicle. FERNANDES-TAVARES was the front passenger of the black Ford Explorer. FERNANDES-TAVARES exited the black Ford Explorer, entered the rear passenger compartment on the driver's side of the UC vehicle and conducted the sale of the Polymer 80 PMF pistol in exchange for $1,900.

29. After leaving the meeting location, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided agents with (i) a Polymer 80 PMF, Model PF940V2, 9mm pistol and (ii) ten rounds of assorted 9mm ammunition. Agents again searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm and ammunition..

25-8169-PGL

### April 22, 2024 –Palmetto State Armory Deal

30. FERNANDES-TAVARES agreed to meet CW-1 and CW-2 at the Newton Street Parking Garage to sell a 9mm pistol on or about April 22, 2024. Prior to the meeting, ATF agents searched CW-1's and CW-2's person for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video and official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 were in contact with FERNANDES-TAVARES while traveling to the meet location. FERNANDES-TAVARES advised that he was already at the meet location awaiting their arrival. CW-1 and CW-2 arrived at the Newton Street Parking Garage and parked on the top level. FERNANDES-TAVARES and an unknown male were already on foot on the top level. FERNANDES-TAVARES entered the rear passenger compartment of the UC vehicle, while the unknown male remained on foot walking around the top level of the garage. FERNANDES-TAVARES conducted the sale of the 9mm pistol in exchange for $2,000.

31. After leaving the meeting location, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided agents with a Palmetto State Armory, Dagger Full Size-S, 9mm pistol, bearing serial number SZ008637. Agents again searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm.

May 7, 2024 –Taurus Pistol and Ammunition Deal

32. FERNANDES-TAVARES agreed to meet CW-1 and CW-2 at the Newton Street Parking Garage and sell a Taurus pistol on May 7, 2024. Prior to the meeting, ATF agents searched CW-1 and CW-2's person for contraband with negative results. Agents equipped CW-1 and CW-2 with a UC vehicle and a recording device which recorded both audio and video and official government funds to purchase the firearm. CW-1 and CW-2 were under constant surveillance by law enforcement throughout the transaction. CW-1 and CW-2 arrived at the Newton Street Parking Garage and parked on the top level. FERNANDES-TAVARES was already on the top level of the parking garage waiting for CW-1 and CW-2 on foot. FERNANDES-TAVARES entered the rear passenger compartment on the driver's side of the UC vehicle and conducted the sale of the Taurus pistol and ammunition in exchange for $1,900.

33. After leaving the meeting location, CW-1 and CW-2 were kept under surveillance until they arrived at a prearranged meeting location. Once there, CW-1 and CW-2 provided agents with (i) a Taurus, Model G2S, 9mm pistol with an obliterated serial number, (ii) two 9mm pistol magazines, and (iii) a gray Reebok ankle sock containing fourteen rounds of assorted 9mm ammunition. Agents again searched CW-1 and CW-2 for contraband and found none. I have reviewed the recording of the meeting which confirmed that FERNANDES-TAVARES sold CW-1 and CW-2 a firearm and other items.

34. As mentioned above in paragraph 9, Guilherme FERNANDES-TAVARES was encountered and arrested by U.S. Customs and Border Protection in February 2021 after entering the United States without permission and without presenting himself to a designated port for inspection. According to records from the Department of Homeland Security, FERNANDES-

TAVARES is a citizen of Brazil. I have reviewed photographs taken by U.S. Customs and Border Protection from this arrest and have compared them to the individual in the recorded controlled firearms transactions, I believe that the individuals are one and the same, Guilherme FERNANDES-TAVARES.

35. FERNANDES-TAVARES is currently in the custody of the Worcester County Sheriff's Office stemming from state firearms charges pending in Worcester Superior Court. I have received a copy of the Worcester County Sheriff's Office booking report containing a booking image of Guilherme Fernandes Tavares. When comparing the booking image contained in the Worcester County Sheriff's Office Booking Report of Guilherme Fernandes Tavares to the individual in the recorded controlled firearms transactions, I believe that the individuals are the same person. The booking sheet indicates that FERNANDES-TAVARES has Brazilian citizenship.

36. Based on a query of the ATF Federal Licensing System, it has been determined that FERNANDES-TAVARES does not possess a license to engage in the business of dealing firearms.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

25-8169-PGL

## CONCLUSION

37. Based on the information set forth above, I have probable cause to believe that Guilherme FERNANDES-TAVARES has engaged in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A). Accordingly, I respectfully request that the Court issue the attached criminal complaint and warrant for the arrest of FERNANDES-TAVARES.

*Peter Milligan /by Paul G. Levenson*
Peter Milligan
Special Agent, ATF

SWORN to telephonically in accordance with Fed. R. Crim. P. 4.1 on this date of March 7, 2025.

HON. PAUL G. LEVENSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

on this  7th  day of March, 2025